In the Matter of D.R. GORIS PLUMBING, INC., Debtor.

Jary C. NIXON, Trustee, Plaintiff,

v.

DAVIS WATER AND WASTE INDUSTRIES, INC., d/b/a Davis Meter and Supply Company, Defendant.

Bankruptcy No. 83–227.
Adv. No. 83–762.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 18, 1985.

Jary C. Nixon, Tampa, Fla., for plaintiff.

Robert W. Clark, Tampa, Fla., for defendant.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration involves a Complaint to Avoid a Preferential Transfer filed by Jary C. Nixon, as Trustee, against Davis Water and Waste Industries, Inc., d/b/a Davis Meter and Supply Company (Davis). The Trustee seeks the entry of a judgment in the amount of $1,809 plus interest from May 12, 1983 and costs. The Trustee's claim is based on the allegations that within 90 days prior to the commencement of the case, Davis repossessed on account of an antecedent debt incurred more than 45 days prior to the transfer by the Debtor, ceramic pipes with an approximate value of $1,809. The Trustee further alleges that he has made demand on Davis for payment of the value of the repossessed ceramic pipes; that Davis refused and failed to make payment; that at the time of the repossession the Debtor was insolvent; and that the effect of the repossession was to enable Davis to receive more than it would receive under Chapter 7.

Both the Trustee and Davis filed Motions for Summary Judgment based on the allegations that there are no genuine issues of material fact and the controversy before the Court may be resolved as a matter of law. The record reveals the following undisputed facts:

Sometime during 1982, the Debtor purchased from Davis, on open account, certain plumbing supplies and materials for the purpose of incorporating the same into an improvement at the Crossroads Baptist Church. All of the supplies and materials purchased from Davis were delivered to the job site. Thereafter, in September 1982, the construction project was completed and the Debtor removed part of the plumbing supplies to its warehouse and left the remainder at the construction site.

Davis filed suit in the County Court in and for Pinellas County to recover the balance due on the open account and on October 12, 1982, a Final Judgment was entered in favor of Davis and against the Debtor in the case styled *Davis Meter and Supply vs. D.R. Goris Plumbing, Inc.* In due course, the sheriff executed a writ and levied on the ceramic pipes stored at both the construction site and the Debtor's warehouse and sold them for the sum of $1,809. On January 31, 1983, the Debtor filed a Voluntary Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code. The Trustee filed the instant complaint to avoid the transfer as a preference.

It is the Trustee's position that at the time of the repossession and sale of the ceramic pipe, Davis no longer possessed a perfected statutory lien as provided by § 713.15 Fla.Stat. (Florida Mechanics Lien Law); that Davis elected to file suit on the debt rather than pursue its remedies under § 713.15 Fla.Stat.; that by so doing, the Debtor lost its mechanic lien and was, at the time of the repossession and sale, merely an unsecured creditor; and that the proceeds from the sale of the repossessed pipe constitutes a preferential payment which may be recovered by the Trustee.

Davis contends that the transaction is not avoidable as a preference based on § 547(b) because (1) under the law of Florida, a lienor may sue and obtain judgment on its contractual debt without waiving its statutory mechanics lien; (2) that at the time the property was transferred, the property was subject to a perfected statutory lien by virtue of § 713.15 Fla.Stat.; (3) that § 547(c)(6) expressly states that the Trustee may not recover as a preference, property which was secured by a statutory lien that is not avoidable under § 545; and (4) that the Trustee is unable to show any superior interest in the goods. Thus, Davis urges the Court to enter a final judgment in its favor and dismiss the Trustee's Complaint.

It is conceded by Davis and there is no dispute that all operating elements required by § 547(b) in order to avoid a transfer as a preference are present with the exception of subclause (b)(5)(A), (B) and (C). This subclause requires that before a transfer can be avoided as a preference, the trustee has a burden to establish that as a result of the transfer, the recipient of the transfer received more than he would have received in a Chapter 7 case. While this subclause, as drafted, appears to be complex and at first blush difficult to comprehend, it is merely nothing more than a not very well articulated restatement of an old and well-recognized principle that before there is a preference, there must be a "creditor" who is preferred over other creditors standing in the same legal position with the same legal status. Thus,

when a transfer occurs within the prohibitive period, i.e. 90 days preceding the commencement of the case, an unsecured creditor may have a voidable preference. However, a transfer to a creditor holding a valid consensual, judicial or statutory lien on any property of the estate seldom, if ever, could be a voidable preference unless there are other creditors in the same legal class, in addition to the secured creditor who received the preference. For example, this might occur in the situation where there are several mechanics lienors whose liens relate back to the commencement of the construction, and encumber the identical properties of the owner, who happen to be a debtor involved in a case under any of the operating Chapters of the Code.

However, with this exception noted, a transfer to a secured creditor will not produce the result prohibited by § 547 because by retaining the properties transferred, the secured creditor would not receive more than it would have received in a Chapter 7 case, a condition required by § 547(b)(5)(A) before a transfer could be avoided as a preferential transfer.

Applying the foregoing general principles to the matter under consideration, it is evident that the ultimate question centers around the legal status of Davis at the time the ceramic pipes were repossessed from the job site. This is so because if at the time of the repossession, Davis had a valid lien on the ceramic pipes, the trustee cannot prevail for the obvious reason that Davis would be entitled to enforce its lien against the ceramic pipes in a Chapter 7 case by either repossessing the ceramic pipes or if sold by the trustee, by receiving the proceeds of the sale in satisfaction of its lien.

The defense asserted by Davis in opposing the trustee's claim is based on Chapter 713.15 Fla.Stat. which in pertinent part provides as follows:

"If for any reason the completion of an improvement is abandoned or though the improvement is completed, materials delivered are not used therefor, a person

who has delivered materials for the improvement which have not been incorporated therein and for which he has not received payment may peaceably repossess and remove such materials or replevy the same and thereupon he shall have no lien on the real property or improvements and no right against any persons for the price thereof, but shall have the same rights in regard to the materials as if he had never parted with their possession. This right to repossess and remove or replevy the materials shall not be affected by their sale, encumbrance, attachment, or transfer from the site of improvement, except that if the materials have been so transferred, the right to repossess or replevy them shall not be effective as against a purchaser or encumbrance thereof in good faith whose interest therein is acquired after such transfer from the site of the improvement or as against a creditor attaching after such transfer. The right of repossession and removal given by this section shall extend only to materials whose purchase price does not exceed the amount remaining due to the person repossessing but where materials have been partly paid for, the person delivering them may repossess them as allowed in this section on refunding the part of the purchase price which has been paid."

Unfortunately the language of the Statute rather than furnishing an answer to the question, merely opens an avenue of inquiry leading into uncharted waters and brings into play an interpretation of a highly technical Statute of this State which have not received an authoritative interpretation by any court of this State. While the case of *Florida Federal Savings & Loan Ass'n. v. Britt's, Inc.*, 455 So.2d 1345 (Fla. 5th DCA 1984) indirectly touched upon this issue by referring to the case of *Avdoyan v. Davis Water & Waste Industries, Inc. (In re Lowery Brothers, Inc.)*, 589 F.2d 851 (5th Cir.1979), it did not really furnish any assistance in solving the problem and did not furnish any authoritative interpretation of the Statute. This being the case, the matter must be resolved by analyzing the Fifth Circuit Court of Appeals decision in *Avdoyan, supra*, which is the only decision which has dealt directly with this problem.

Before discussing the rationale of *Avdoyan, supra* and its holding, it should be pointed out that the case was decided by the old Fifth Circuit. Theoretically, this Court would ordinarily be free to disregard the holdings and rationale of *Avdoyan, supra* and could make its own determination as to the effect of the statutory question. However, the Eleventh Circuit Court of Appeals in considering the precedential value of the decisions of the old Fifth Circuit stated in *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir.1981) that decisions of the United States Court of Appeals for the Fifth Circuit, as that Court existed on September 30, 1981, handed down by that court prior to close of business on that date, would be binding as precedent in the Eleventh Circuit for the Court of Appeals, district courts and bankruptcy courts in the Circuit. *Fifth Circuit Court of Appeals Reorganization Act of 1980*, §§ 1, 9, 9(1, 2), 28 U.S.C.A. §§ 1 note, 41 note. Thus, this Court is duty bound to follow the holding of *Avdoyan, supra.*

The Fifth Circuit in *Avdoyan, supra*, speaking through Judge Tjoflat, held that the term "statutory lien" was not defined by the Bankruptcy Act of 1898 which was the controlling bankruptcy law at the time *Avdoyan, supra* was decided. Thus, the *Avdoyan* Court, in the absence of a definition of the term "lien" by the Bankruptcy Act of 1898 concluded that the question must be answered with reference to the state law. Inasmuch as there was no reported Florida case which decided whether or not § 715.15 Fla.Stat. created a lien, the court anticipated how a Florida court would rule on the question when it was confronted with this problem. The term "lien" has received judicial interpretation and it has been defined as "a charge upon the property for the payment of debt or a duty." *Phillips v. Atwell*, 76 Fla. 480, 488, 80 So. 180, 182 (1918). The Supreme Court of Florida in the case of *City of Sanford v.*

**150**

*McClelland,* 121 Fla. 253, 257, 163 So. 513, 514 (1935) held that a lien is a qualified right or a proprietary interest, which may be exercised over the property of another. It is a right which the law gives to have a debt satisfied out of a particular thing. The term "lien" is defined in § 101(31) of the Code and means a charge against or interest in property to secure payment of a debt or performance of an obligation. Thus, it is apparent that the definition of the term "lien" as determined by the courts of this state has an identical meaning as the term is defined by the Bankruptcy Code in § 101(31). Thus, there is no reason why the result should be different from that which was reached by the Fifth Circuit in *Avdoyan, supra.*

In support of the proposition that the right to repossess goods sold by a materialman to a subcontractor created, in fact, a "charge-like" lien, the Fifth Circuit placed great emphasis on the fact that the Statute under scrutiny is a part of Florida "Mechanics' Lien Law" which is Part I of Chapter 713 of the Florida Statutes, entitled "Liens, Generally." Thus, § 713.15 is categorized by the Florida Legislature under both "Liens" and "Mechanics' Liens." While it is true that a lien granted to mechanics and materialmen is a lien on the *real property* to which the improvements were furnished by materialmen and mechanics, it is clear it was granted to assure payment for the goods and services; and, the right to repossess unpaid goods granted by § 713.15 was clearly designed to accomplish the very same result, that is, to assure that the supplier of goods is paid and granted the right to repossess if the job is abandoned or if the job is completed, but the materials sold to the subcontractor were not used.

■ Having concluded, based on *Avdoyan, supra,* that § 713.15 Fla.Stat. did, in fact, create a lien in favor of Davis, it follows that Davis was a secured creditor at the time it repossessed the ceramic pipes from the job site.

This leads to the question whether or not the lien created by Chapter 713.15 Fla.Stat.

would survive the provisions of the Code set forth in § 545 which invalidates certain types of statutory liens. It should be pointed out at the outset that the lien under consideration exists only by virtue of the Statute and has nothing to do with the agreement of the parties; equally, it is evident that the lien is not a judicial lien since there was no judicial proceeding which created the lien. Based on the foregoing, there is no doubt that the lien in question meets the definition of a statutory lien of the Bankruptcy Code set forth in § 101(31). For this reason, it is necessary to consider the invalidating provision of § 545 of the Code.

Section 545 is basically a restatement of § 67(c)(1) of the Bankruptcy Act of 1898, a Section which was designed by Congress to prevent state created priorities in contravention to the scheme of distribution of the Bankruptcy Act of 1898. Just like the predecessor Statute, the statutory liens which come within the purview of § 545 are all tied to the financial conditions of the Debtor. Thus, they do not exist until a case under Title 11 concerning the Debtor is commenced, § 545(1)(A); when there is an insolvency proceeding commenced against the debtor in a non-bankruptcy forum, § 545(1)(B); when a custodian is appointed or authorized to take possession of the properties of the debtor, § 545(1)(C); when the debtor becomes insolvent, § 545(1)(D); when the debtor's financial condition fails to meet a specified standard, § 545(1)(E); or when properties of the debtor are levied upon at the insistence of the entity other than one claiming the statutory lien, § 545(1)(F). This Section also provides that the statutory lien is invalid which is not perfected at the time of the commencement of the case against a bona fide purchaser; whether or not such purchaser, in fact, exists, § 545(2). Lastly, a statutory lien granted to landlord, § 545(3) and (4) is also invalid under this Section.

Even a cursory reading of this Section leaves no doubt that the lien under consideration is not the type of statutory lien which Congress intended to reach by enact-

ing § 545. This lien comes into existence either when the job is abandoned by the contractor or when the job is completed, but the materials sold to the contractor are not used. It is evident that neither of these events has any direct connection with the Debtor's financial condition or the Debtor's insolvency. Nor can it be said that this lien falls within the purview of § 545(1)(C) since the right of repossession does not depend on the appointment of a custodian and the authority granted to the supplier of goods to take possession is not granted to the custodian but the holder of a lien itself. Nor does § 545(1)(F) apply simply because the goods levied upon were levied upon on behalf of the very entity claiming the lien.

Based on the foregoing, this Court is satisfied that the lien created by § 713.15 Fla.Stat. is not the type of statutory lien which was designed by Congress to be voided by the trustee pursuant to § 545 of the Bankruptcy Code.

Having concluded that Chapter 713.-15 did, in fact, create a statutory lien which is not within the invalidating provisions of § 545, this ordinarily would resolve the matter under consideration. The difficulty arises, however, that in this particular instance the ceramic pipes were not repossessed by Davis by utilizing the right of repossession granted by § 713.15 Fla.Stat. On the contrary, Davis elected to file a suit for damages, obtained a money judgment against the debtor, procured a writ of execution; and delivered the same to the sheriff who ultimately executed the writ and levied upon the pipes and seized them. Thus, it might be contended that Davis obtained the pipes not by exercising its statutory lien granted by § 713.15 Fla. Stat., but by causing a levy to be made in order to enforce a money judgment just like any other unsecured creditor would do after having obtained a judgment against the debtor.

This raises the question whether filing suit on the debt seeking money damages and the subsequent judgment obtained by Davis operated as an election of remedies thereby waiving the statutory lien right which in turn could preclude Davis from asserting a now perfected lien on the goods pursuant to § 715.15 Fla.Stat. This Court is satisfied that the question must be answered in the negative simply because another provision of the Statute provides as follows:

Section 713.30 Fla.Stat. (1984) provides: Part I of this chapter shall be cumulative to other existing remedies and nothing contained in Part I of this chapter shall be construed to prevent any lienor or assignee under any contract from maintaining an action thereon at law in like manner as if he had no lien for the security of his debt, and *the bringing of such action shall not prejudice his rights under part I of this chapter*, except as herein otherwise expressly provided. (emphasis supplied)

Based on the provisions of the Statute, this Court is satisfied that Chapter 713.30 Fla. Stat. permits a materialman to sue on a debt and obtain a judgment without foregoing its lien rights created by the Statute. *See, Remington Construction Co., Inc. v. Hamilton Electric, Inc.,* 181 So.2d 183 (Fla. 3d DCA 1965). Neither is the fact that Davis elected to enforce a judgment lien which is the judicial lien to be affected by any provisions of § 545 which only deals with certain types of statutory liens. Thus, it is evident that § 713.15 Fla.Stat. gave Davis a statutory lien unaffected by the voiding provisions of § 545; and that the statutory lien was not waived by Davis because it pursued its claim for damages. For the reasons stated, the involuntary transfer of the ceramic pipes to Davis cannot be avoided as a preferential transfer because it did not enable Davis to obtain a greater share of the assets of the Debtor than it would have received in a Chapter 7 liquidation case.

A separate final judgment will be entered in accordance with the foregoing.